UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

THERESA TAYLOR,

    Plaintiff,

v.                                                       Case No:   2:15-cv-749-FtM-MRM

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

## OPINION AND ORDER

This cause is before the Court on Plaintiff Theresa Taylor's Complaint (Doc. 1) filed on December 1, 2015. Plaintiff seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her claim for supplemental security income. The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed legal memoranda in support of their positions. For the reasons set out herein, the decision of the Commissioner is **AFFIRMED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).[1]

**I.   Social Security Act Eligibility, the ALJ's Decision, and Standard of Review**

    **A.  Eligibility**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve

---

[1] Plaintiff moved "the Court to enter summary judgment." (Doc. 22 at 1). Nevertheless, this Court's role in social security matters is governed by 42 U.S.C. § 405(g). Accordingly, the standard of review pursuant to 42 U.S.C. § 405(g) is set forth in this Opinion and Order.

months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. § 416.905. The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity that exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382c(a)(3); 20 C.F.R. §§ 416.905 - 416.911.

### B. Procedural History

On March 2, 2011, Plaintiff filed an application for supplemental security income asserting an onset date of December 31, 2003. (Tr. at 123). Plaintiff's application was denied initially on June 1, 2011 (Tr. at 78), and upon reconsideration on August 16, 2011 (Tr. at 79). A hearing was held before Administrative Law Judge ("ALJ") Larry J. Butler on May 30, 2013. (Tr. at 34-69). The ALJ issued an unfavorable decision on April 7, 2014. (Tr. at 12-29). The ALJ found Plaintiff not to be under a disability from March 2, 2011, the date her application was filed. (Tr. at 24).

On October 7, 2015, the Appeals Council denied Plaintiff's request for review. (Tr. at 1-7). Plaintiff filed a Complaint (Doc. 1) in this Court on December 1, 2015. Defendant filed an Answer (Doc. 14) on April 6, 2016. The parties filed Memoranda in support. (Docs. 22, 23, 26). The parties consented to proceed before a United States Magistrate Judge for all proceedings. (*See* Doc. 18). This case is ripe for review.

### C. Summary of the ALJ's Decision

An ALJ must follow a five-step sequential evaluation process to determine if a claimant has proven that she is disabled. *Packer v. Comm'r of Soc. Sec.*, 542 F. App'x 890, 891 (11th Cir. 2013) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)).[2] An ALJ must determine

---

[2] Unpublished opinions may be cited as persuasive on a particular point. The Court does not rely on unpublished opinions as precedent. Citation to unpublished opinions on or after January 1,

whether the claimant: (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) has the residual functional capacity ("RFC") to perform her past relevant work; and (5) can perform other work of the sort found in the national economy. *Phillips v. Barnhart*, 357 F.3d 1232, 1237-40 (11th Cir. 2004). The claimant has the burden of proof through step four and then the burden shifts to the Commissioner at step five. *Hines-Sharp v. Comm'r of Soc. Sec.*, 511 F. App'x 913, 915 n.2 (11th Cir. 2013).

At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since March 2, 2011, the date of Plaintiff's application. (Tr. at 17).

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: status post stroke with left-sided residual weakness, headaches, degenerative joint disease of the thoracic spine, and chronic obstructive pulmonary disease. (Tr. at 17).

At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart. P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925 and 416.926). (Tr. at 19).

Based on the evidence, the ALJ determined that Plaintiff had the residual functional capacity ("RFC"):

> to lift and/or carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk 6 hours in an 8-hour workday, and sit 6 hours in an 8-hour workday. She could occasionally climb ramps or stairs, stoop, kneel, and crouch, but never climb ladders, ropes, or scaffolds, balance, and crawl. The claimant could occasionally reach overhead with her left upper extremity. She could frequently handle/grasp, finger, feel, operate hand tools, and push/pull with her left upper extremity. The claimant could frequently operate foot controls with the left lower extremity. The

---

2007 is expressly permitted under Rule 31.1, Fed. R. App. P. Unpublished opinions may be cited as persuasive authority pursuant to the Eleventh Circuit Rules. 11th Cir. R. 36-2.

>claimant should avoid concentrated exposure to pulmonary irritants and hazards, such as unprotected heights and machinery.

(Tr. at 19).

At step four, the ALJ determined that Plaintiff had no past relevant work. (Tr. at 23).

At step five, after considering Plaintiff's age, education, work experience, and RFC, the ALJ determined that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (Tr. at 23). Specifically, based on his finding that Plaintiff can perform light work, the ALJ determined that a finding of "not disabled" was appropriate under the framework of Medical-Vocational Rule 202.l0. (Tr. at 24). Accordingly, the ALJ concluded that Plaintiff was not been under a disability since March 2, 2011, the date the application was filed. (Tr. at 24).

### D. Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standard, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. §405(g). Substantial evidence is more than a scintilla; *i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982); *Richardson*, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that "the evidence preponderates against" the Commissioner's

4

decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating that the court must scrutinize the entire record to determine reasonableness of factual findings).

## II. Analysis

On appeal, Plaintiff raises three issues:

(1) The ALJ erred by failing to find that Plaintiff has a severe mental impairment.

(2) The ALJ's findings at Step Five of the sequential evaluation process are not supported by substantial evidence.

(3) There is sufficient evidence of bias, or at a minimum the appearance of compromised decision-making on the part of the ALJ, warranting remand and re-assignment to a different ALJ other than ALJ Larry Butler.

(Doc. 22 at 2-3). The Court addresses each of these issues in turn.

### A. Plaintiff's Mental Impairments

The first issue raised by Plaintiff is that the ALJ committed harmful error by finding her mental impairments to be non-severe. (Doc. 22 at 6-10). Defendant disagrees, arguing that substantial evidence supports the ALJ's severity assessment. (Doc. 23 at 4-8).

On this issue, the Court notes that an impairment is "severe" under the Commissioner's regulations if it "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 416.920(c); 416.921(a). According to the Eleventh Circuit, however, "[n]othing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe." *Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 825 (11th Cir. 2010). Rather, the ALJ must only consider the claimant's impairments in combination, whether severe or not. *Id.* If any impairment or combination of impairments qualifies as "severe," step two is

satisfied and the claim advances to step three. *Gray v. Comm'r of Soc. Sec.*, 550 F. App'x 850, 852 (11th Cir. 2013) (citing *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987)).

In this case, the Court notes that the ALJ made a determination that Plaintiff suffered from a number of severe impairments including: status post stroke with left-sided residual weakness, headaches, degenerative joint disease of the thoracic spine, and chronic obstructive pulmonary disease. (Tr. at 17). Because the ALJ made a determination that Plaintiff suffered from at least one severe impairment, the ALJ was not required to list every impairment that may be classified as severe. *See Heatly*, 382 F. App'x at 825. Rather, the only requirement is that the ALJ considered all of Plaintiff's impairments in combination, whether severe or non-severe. *See id.*

Here, the record demonstrates that the ALJ evaluated all of Plaintiff's impairments in combination, whether severe or non-severe. Specifically, in making his RFC determination, the ALJ stated that:

> In making this finding, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 416.929 and SSRs 96-4p and 96-7p. The undersigned has also considered opinion evidence in accordance with the requirements of 20 CFR 416.927 and SSRs 96-2p, 96-Sp, 96-6p and 06-3p.

(Tr. at 19).

Moreover, the Court notes that the ALJ specifically considered Plaintiff's mental impairments and found them to be non-severe. (Tr. at 17-19). In fact, a review of the ALJ's Decision shows that the ALJ carefully reviewed all of the objective medical evidence and the medical opinion evidence of record. (Tr. at 17-19). Furthermore, the record shows that the ALJ considered Plaintiff's mental impairments in making a credibility determination of Plaintiff in the RFC assessment. (Tr. at 20-21).

Additionally, while Plaintiff is correct that the ALJ did not specifically discuss her Global Assessment of Functioning ("GAF") score (Doc. 22 at 7), the Court notes that there is no rigid requirement that the ALJ must state with particularity the weight given to GAF scores. *See Hurt v. Commissioner of Social Security*, No. 6:12–cv–214–Orl–DAB, 2013 WL 462005 at * 4 (M.D. Fla. Feb.7, 2013). Moreover, this Court has recognized that GAF scores are of "questionable value in determining an individual's mental functional capacity." *Wilson v. Astrue*, 653 F. Supp. 2d 1282, 1293 (M.D. Fla. 2009) (internal citation omitted).

In sum, regardless of whether the ALJ erred in his conclusion that Plaintiff's mental impairments were non-severe, the record demonstrates that the ALJ considered Plaintiff's mental impairments in combination with Plaintiff's other impairments. Therefore, the ALJ applied the correct legal standard and did not err in failing to find Plaintiff's mental impairments are severe, or if he did err, the error was harmless. *See Heatly*, 382 F. App'x at 825.

## B. The ALJ's Step Five Analysis

### i. *The Parties' Arguments*

Plaintiff next argues that the ALJ erred in his analysis at step five of the sequential evaluation. (*See* Doc. 22 at 10). Specifically, Plaintiff argues that the ALJ's conclusion that Plaintiff retains a maximum RFC equivalent to that required for light work is not supported by substantial evidence. (*Id.*). Plaintiff contends that the ALJ "found that the Plaintiff's left-sided weakness from a prior cerebrovascular accident constitutes a severe impairment," but, notwithstanding this finding, still "concluded that Plaintiff is capable of performing work at the light exertional level." (*Id.* (citing Tr. at 17, 19)). Plaintiff argues that "[t]hese two findings are inconsistent insofar as the Plaintiff's severe left-sided weakness limits her ability to stand and/or walk less than six hours during a working day." (*Id.* (citing SSR 83-10)). Moreover, Plaintiff

argues that it was also "inconsistent to find that a claimant with severe left-sided weakness (including left hand weakness), retains the ability to lift 20 pounds on an occasional basis." (*Id.* (citing 20 CFR 416.967(b))).

Further, Plaintiff points to her August 2012 fall. (*Id.* (citing (Tr. at 523-537)). Plaintiff states that she fell and fractured her left hand. (*Id.*). Plaintiff argues that "[e]ven if not a severe impairment when considered in isolation, the ALJ [sic] decision fails to discuss and analyze the cumulative effect of the fracture and residual left-sided weakness in assessing Plaintiff's manipulative limitations." (*Id.* at 10-11 (citing 20 CFR 416.945(e); SSR 85-28)). Plaintiff argues that this fracture in combination with her severe left-handed weakness due to her stroke "causes limitations in her ability to perform basic work activities such as lifting, pushing, pulling, reaching, carrying, or handling, to a greater extent than assessed by the ALJ." (*Id.* at 11). Thus, Plaintiff argues that "[t]he ALJ's failure to consider these combined limitations has resulted in an inaccurate RFC" and an inaccurate "finding that the Plaintiff can work on a regular and continuing basis [, which] is not supported by substantial evidence and requires reversal." (*Id.* (citing SSR 96-9p)). Accordingly, Plaintiff contends that "[g]iven that the evidentiary record does not support a conclusion that Plaintiff can perform even a limited range of work at the light exertional level, this claim should be adjudicated pursuant to the Medical-Vocational Guidelines." (*Id.*). Specifically, Plaintiff argues that her maximum RFC is, at best, at the sedentary exertional level. (*Id.*). Plaintiff contends that her RFC together with her age, education, and lack of past work, supports a finding of "disabled" as dictated by Medical-Vocational Rule 201.12; 20 CFR Part 404, Subpart P, Appendix 2, 201.12. (*Id.*).

Defendant disagrees, arguing that substantial evidence supports the ALJ's assessment of Plaintiff's physical RFC. (Doc. 23 at 1). Specifically, Defendant argues that the ALJ

"accounted for the credible limitations stemming from the combination of Plaintiff's impairments, including her left-sided residual weakness." (*Id.* at 9). Defendant notes that the ALJ limited Plaintiff "to light work that allowed for occasional overhead reaching with her left upper extremity; frequent as opposed to constant[] use of her left upper extremity to handle, grasp, finger, feel, operate hand tools, and push or pull with her left upper extremity; and frequent operation of foot controls with her left lower extremity. (*Id.* (citing Tr. at 19)).

Defendant argues that the ALJ's RFC finding is supported by substantial evidence. (*Id.*). Defendant specifically contends that, "[a]s the ALJ discussed, the objective medical findings contained in the Plaintiff's medical records do not support a finding that Plaintiff was as limited as she alleged." (*Id.* (citing Tr. at 21, 420-37, 524-25, 527-37, 539-49)). For instance, as the ALJ noted, Defendant points out that in September 2011, Plaintiff's balance and gait were normal and that no musculoskeletal or neurological abnormalities were noted other than tenderness to palpation of the left ribs. (*Id.* (citing Tr. at 22, 421, 428)). Furthermore, Defendant notes that Plaintiff sought treatment for a hand injury on August 15, 2012, but reported being healthy aside from her left hand injury. (*Id.* (citing Tr. at 22, 524)). Defendant further notes that, for the hand injury, "Plaintiff was treated with a cast and splint and prescribed Lortab and diclofenac for pain control." (*Id.* (citing Tr. at 22, 525)).

Moreover, Defendant states that, as the ALJ pointed out, Plaintiff testified that she was able to work after her stroke. (*Id.* at 10 (Tr. at 23, 58)). Defendant further points to the ALJ's discussion of Plaintiff's activities, which Defendant argues indicates that Plaintiff was not as limited as she alleged. (*Id.* (citing Tr. at 21)). For example, as the ALJ noted, records showed that Plaintiff could "prepare simple meals, perform light household chores, go out alone, and drive a car." (*Id.* (citing Tr. at 21, 177-79)). Moreover, as the ALJ noted, Defendant states that

that "Plaintiff reported in January 2013 that she was walking two to three times per week for exercise." (*Id.* (citing Tr. at 21, 540)).

Furthermore, Defendant points to the opinion of State Disability Determination Services consultant Violet Acero Stone, M.D. (*Id.* at 11). Defendant argues that Dr. Stone specifically opined that "Plaintiff could perform light exertional level work with frequent climbing of ramps or stairs, stooping, kneeling, crouching, and crawling and occasional balancing." (*Id.* (citing Tr. at 70-75, 417)). Defendant notes that "Dr. Stone stated that Plaintiff reported a history of stroke in 1997 with weakness on left side, pain on left side, headaches, balance issues, and memory loss, but her examinations showed no significant neurological deficits." (*Id.* (citing Tr. at 417)). Defendant states that while Dr. Stone noted that Plaintiff maintained that her symptoms were worsening, Dr. Stone indicated that the medical evidence of record does not support the allegations. (*Id.* (citing Tr. at 417)).

Finally, Defendant states that "the ALJ found that Plaintiff experienced some decreased mobility and grip strength in her left hand." (*Id.* (citing Tr. at 23, 56, 529)). Nevertheless, Defendant notes that the ALJ stated that Defendant "'has some ability to use the left hand and she is right hand dominant' and the evidence does not demonstrate complete inability to use her left hand, as Plaintiff alleges." (*Id.*). Accordingly, Defendant argues that substantial evidence supports the ALJ's RFC finding. (*Id.*).

      *ii. Analysis*

The RFC is the most a plaintiff is able to do despite her physical and mental limitations. 20 C.F.R. § 416.945(a)(1). The ALJ must determine a plaintiff's RFC using all of the relevant medical and other evidence in the record. *Phillips*, 357 F.3d at 1238; 20 C.F.R. § 416.945(e). As stated above, however, the scope of this Court's review is limited to determining whether the

10

ALJ applied the correct legal standard, *McRoberts*, 841 F.2d at 1080, and whether the findings are supported by substantial evidence, *Richardson*, 402 U.S. at 390. In this case, it is clear that the ALJ's RFC determination is supported by substantial evidence.

Specifically, the Court agrees with the ALJ that the objective medical findings contained in the Plaintiff's medical records do not support a finding that Plaintiff was as limited as she alleged. (*See* Tr. at 21-23). For instance, as the ALJ noted, in September 2011, Plaintiff's balance and gait were normal. (Tr. at 22, 421, 428). Furthermore, as the ALJ noted, on August 15, 2012, records showed that Plaintiff sought treatment for a hand injury but reported being healthy aside from her left hand injury. (Tr. at 22, 524-25). Further, while the medical records showed that Plaintiff had some issues with her left hand including unsteadiness, decreased weakness, and decreased grip strength, the ALJ nevertheless pointed out that Plaintiff testified that she was able to work after her stroke. (Tr. at 22-23, 58, 420-37). Similarly, while the ALJ noted that Plaintiff experienced some decreased mobility and grip strength in her left hand, the ALJ stated that Plaintiff nevertheless demonstrated some ability to use her left hand. (Tr. at 23 (citing Tr. at 529)). The ALJ further noted that Plaintiff is right hand dominant and that the evidence does not demonstrate a complete inability by Plaintiff to use her left hand. (Tr. at 23 (citing Tr. at 529)). Upon review, the above-cited evidence provides substantial evidence in support of the ALJ's decision.

Additionally, the ALJ gave great weight to the opinion of Dr. Violet Acero Stone, the State Disability Determination Services consultant. (Tr. at 22). Dr. Stone noted that Plaintiff reported a history of stroke in 1997 with weakness on left side, pain on left side, headaches, balance issues, and memory loss. (Tr. at 417). Notwithstanding this history, Dr. Stone opined that her examinations showed no significant neurological deficits. (Tr. at 417). Further, while

Plaintiff maintained that her symptoms were worsening, Dr. Stone indicated that the medical evidence of record does not support Plaintiff's allegations. (Tr. at 417). A review of Dr. Stone's opinion shows it to be consistent with the finding that Plaintiff could perform light work. (*See* Tr. at 24, 70-75).

Furthermore, the ALJ cited Plaintiff's activities in support of his conclusion that Plaintiff was not as limited as alleged. (*See* Tr. at 21). In evaluating this issue, the Court notes that participation in daily activities of short duration, such as housework or fishing, does not disqualify a claimant from disability. *Lewis v. Callahan*, 125 F.3d 1436, 1441 (11th Cir. 1997). Nevertheless, a claimant's daily activities are a factor for the ALJ to consider in determining credibility. *See Moreno v. Astrue*, 366 F. App'x 23, 28 (11th Cir. 2010); *see also* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). Here, as the ALJ noted, the records showed that Plaintiff could prepare simple meals, perform light household chores, go out on her own, and drive a car. (Tr. at 21, 177-79). Moreover, as the ALJ noted, Plaintiff reported in January 2013 that she was walking two to three times per week for exercise. (Tr. at 21, 540). Here, the ALJ specifically found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." (Tr. at 21). Upon consideration, the Court finds that a review of Plaintiff's activities supports the ALJ's conclusion that Plaintiff was not as limited as she alleged.

Upon review of the medical records and other evidence cited above, the Court finds that the ALJ cited substantial evidence of record in making his RFC determination and his finding that Plaintiff can perform light work. The Court, therefore, finds that the ALJ's RFC determination is supported by substantial evidence. Accordingly, because the ALJ did not err in

his RFC determination of Plaintiff, the Court finds that no basis exists for concluding that the ALJ erred at step five of the sequential evaluation.

### C. Bias of the ALJ

The final issue raised by Plaintiff concerns her assertion that the ALJ was biased against Plaintiff's counsel, and, as a result, may have been biased against Plaintiff in making his decision in this case. (Doc. 22 at 11-18; Doc. 26 at 5-8).

On this point, the Court notes that the "impartiality of the ALJ is integral to the integrity of the system." *Hinson v. Colvin*, No. 2:14-cv-222-FtM-DNF, 2014 WL 6769341, at *3 (M.D. Fla. Dec. 1, 2014) (quoting *Miles v. Chater*, 84 F.3d 1397, 1401 (11th Cir. 1996)). Nevertheless, courts "start from the presumption that administrative adjudicators, such as ALJs are unbiased." *Id.* (citing *McClure*, 456 U.S. at 195-96)). "[A] claimant challenging this presumption carries the burden of proving otherwise." *Strople v. Colvin*, No. 3:13-cv-1518-J-34MCR, 2015 WL 1470866, at *7 (M.D. Fla. Mar. 31, 2015).

In this instance, the Court finds that Plaintiff has not provided sufficient evidence to demonstrate that the ALJ was biased as to Plaintiff's case or her counsel. Plaintiff has not shown that the separate litigation pending – that indirectly involved Plaintiff's counsel – influenced the ALJ's decision in this case. Moreover, even assuming *arguendo* that the ALJ was biased, there is substantial evidence of record supporting the ALJ's decision. Accordingly, the Court declines to remand this case based on Plaintiff's insufficiently supported allegations of bias.

### III. Conclusion

Upon consideration of the submissions of the parties and the administrative record, the Court finds that the decision of the ALJ is supported by substantial evidence and decided upon proper legal standards.

**IT IS HEREBY ORDERED:**

The decision of the Commissioner is hereby **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g).  The Clerk of Court is directed to enter judgment accordingly, terminate any pending motions and deadlines, and close the case.

**DONE AND ORDERED** in Fort Myers, Florida on December 22, 2016.

_____
MAC R. MCCOY
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties